**IN UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **ADVANCED INTEGRATED CIRCUIT PROCESS, LLC**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**UNITED MICROELECTRONICS CORPORATION,**<br><br>   **Defendant.** | **Case No. 2:24-cv-00730-JRG**<br>**(Lead Case)** |
| **ADVANCED INTEGRATED CIRCUIT PROCESS, LLC**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED,**<br><br>   **Defendant.** | **Case No. 2:24-cv-00623-JRG**<br>**(Member Case)**<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY
LIMITED'S *MOTIONS IN LIMINE***

████████

**TABLE OF CONTENTS**

**Page**

I.      MIL 1: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding TSMC Ltd.'s or other semiconductor manufacturers' (or the semiconductor industry generally) size, market capitalization, worldwide revenues, worldwide profits, earnings, stock price, cash reserve, financial forecast, ability to pay, or any other indications of corporate wealth. ..................................................................................................................1

II.      MIL 2: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony discussing a party's other litigations and any other semiconductor industry litigation, including jury outcomes of litigations. ................3

III.      MIL 3: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony associating Taiwan,TSMC Ltd. or its witnesses with mainland China  or denigrating, disparaging, emphasizing, or commenting unnecessarily regarding TSMC Ltd.'s status as a foreign or Asian company ....................6

IV.      MIL 4: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding an expert's report-drafting process or communications with counsel or current relationship / retention of an expert by any party or law firm, including how much an expert has been paid in matters other than the present one. ...........................................................................................10

V.      MIL 5: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding a corporate representatives' lack of knowledge outside of personal knowledge or Rule 30(b)(6) topics. ...............................13

VI.      Conclusion ...................................................................................................15

█████████

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Coleman Motor Co. v. Chrysler Corp.*,
525 F.2d 1338 (3d Cir. 1975)....................................................................................................5

*Collins v. Wayne Corp.*,
621 F.2d 777 (5th Cir. 1980) ...................................................................................................12

*DataTreasury Corp. v. Wells Fargo & Co.*,
Case No. 2:06-CV-72-DF, Dkt. No. 2392 (E.D. Tex. Oct. 5, 2010) .......................................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)..........................................................................................1, 3, 7

*Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*,
Case No. 2:22-cv-00422-JRG-RSP, Dkt. No. 350 (E.D. Tex. July 8, 2024)...........................13

*Headwater Rsch. LLC v. T-Mobile U.S. Inc.*,
Case No. 2:23-cv-00379-JRG-RSP, Dkt. No. 393 (E.D. Tex. Oct. 21, 2025)..........................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....................................................................................................4

*MobileMedia Ideas, LLC v. HTC Corp.*,
Case No. 2:10-cv-112-JRG, 2013 WL 12158524 (E.D. Tex. Apr. 24, 2013) ..........................8

*Netlist, Inc. v. Samsung Elecs. Co., Ltd.*,
Case No. 2:21-cv-00463-JRG-RSP, Dkt. No. 432 (E.D. Tex. Apr. 5, 2023) ..........................13

*Optis Wireless Tech., LLC v. Apple, Inc.*,
Case No. 2:19-cv-00066-JRG Dkt. No. 886 (E.D. Tex. Feb. 9, 2026)....................................12

*Pictiva Displays Int'l Ltd., v. Samsung Elecs. Co. Ltd.*,
Case No. 2:23-cv-00495-JRG-RSP, Dkt. No. 400 (E.D. Tex. June 30, 2025)........................13

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)...................................................................................................4

*Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*,
Case No. 2:21-cv-15-JRG, 2022 U.S. Dist. LEXIS 100437 (E.D. Tex. May 24, 2022) .........14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019)...............................................................................................14

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)...........................................................................................2, 6

*VirnetX Inc. v. Apple Inc.*,
   Case No. 6:12-cv-855-RWS, 2016 WL 4063802 (E.D. Tex. July 29, 2016) ...........................5

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)....................................................................................1, 2, 7

*VLSI Technology LLC v. Intel Corp.* ,
   Case No. 6:21-cv-00057-ADA, Dkt. No. 564 (W.D. Tex. Mar. 2, 2021) ..............................5,6

*Westbrook v. Gen. Tire & Rubber Co.*,
   754 F.2d 1233 (5th Cir. 1985) .............................................................................................9

*Whitehead v. Food Max of Mississippi, Inc.*,
   163 F.3d 265 (5th Cir. 1998) ...............................................................................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b) ...........................................................................................................11

Fed. R. Civ. P. 30(b)(6)...........................................................................................13, 14, 15

Fed. R. Evid. 401 ...........................................................................................1, 2, 4, 7, 10

Fed. R. Evid. 402 ..........................................................................................1, 2, 7, 10, 15

Fed. R. Evid. 403 ...................................................................................3, 5, 6, 8, 9, 12, 15

Fed. R. Civ. P. 26.................................................................................................................11

████████████

Pursuant to the Court's *Second Amended Standing Order on Motions in Limine in Cases Involving Allegations of Patent Infringement*, Defendant Taiwan Semiconductor Manufacturing Company Limited ("TSMC Ltd." or "Defendant") respectfully submits the following motions in limine and moves to preclude Plaintiff AICP, its counsel, and its witnesses from introducing certain categories of evidence, testimony, and argument as set forth below.

Under Rule 401, evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even relevant evidence must be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403. In patent cases, courts—particularly in this District—carefully police evidentiary boundaries to ensure that determinations affecting liability and damages are based on the accused products and the asserted technology, not extraneous or prejudicial considerations. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329–30 (Fed. Cir. 2014); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226–27 (Fed. Cir. 2014). Each category of evidence addressed below is either irrelevant or presents a substantial risk of unfair prejudice, misleading the jurors, and/or jury confusion that far outweighs any probative value.

I.  **MIL 1: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding TSMC Ltd.'s or other semiconductor manufacturers' (or the semiconductor industry generally) size, market capitalization, worldwide revenues, worldwide profits, earnings, stock price, cash reserve, financial forecast, ability to pay, or any other indications of corporate wealth.**

AICP should be precluded from introducing any evidence, testimony, or argument concerning the size, market capitalization, worldwide revenues, worldwide profits, earnings, stock price, cash reserve, financial forecast, ability to pay, or any other indications of corporate wealth, of TSMC Ltd., other semiconductor companies, or the semiconductor industry more broadly.

As an initial matter, the Court's *Second Amended Standing Order on Motions in Limine* already prohibits the introduction of evidence, testimony, or argument concerning a party's overall financial size or wealth. *See* Court MIL No. 3. This motion is consistent with—and appropriately clarifies—that directive. Specifically, while Court MIL No. 3 broadly addresses "financial size" and "wealth," it does not expressly identify the types of financial metrics that frequently arise at trial, including worldwide revenues, market capitalization, or industry-wide financial data. This motion, together with TSMC Ltd.'s motion to strike opinions of Dr. Teece (Dkt. 258), seeks to confirm that such metrics fall squarely within the Court's prohibition, whether presented as TSMC Ltd. specific data or broader industry figures. Without such clarification, there is a substantial risk that AICP may attempt to introduce these large-scale financial metrics—directly or indirectly—to influence the jury's perception of damages.

These large-scale financial metrics should be excluded for five reasons. First, these categories of evidence are irrelevant. Liability and damages must be determined based on the accused products and the value of the asserted technology—not TSMC Ltd.'s overall financial condition and not the economic scale of the semiconductor industry or its participants. *See* Fed. R. Evid. 401–402. Neither TSMC Ltd.'s global financial performance nor industry-wide financial metrics (including industry participants) make any fact of consequence more or less probable.

Second, the Federal Circuit has repeatedly cautioned against introducing large, unrelated financial figures that distort the jury's damages analysis. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318–20 (Fed. Cir. 2011) (warning that large revenue figures "cannot help but skew the damages horizon for the jury"); *VirnetX*, 767 F.3d at 1329–30. This concern applies equally to company-specific financials and industry-wide data, both of which risk improperly anchoring the jury's view of damages.

2

Third, such evidence undermines the apportionment principles that govern patent damages. Damages must reflect the incremental value of the patented feature, not the overall value of a company, an industry, or other industry participants. *See Ericsson*, 773 F.3d at 1226–27. References to billions in revenues—whether attributed to TSMC Ltd., a semiconductor manufacturer like Intel, or the semiconductor industry—invite the jury to base its award on impermissible considerations untethered to the claimed invention.

Fourth, courts in this District routinely exclude financial comparisons and industry-wide metrics that risk misleading the jury or inflating damages. *E.g.*, *Headwater Rsch. LLC v. T-Mobile U.S. Inc.*, Case No. 2:23-cv-00379-JRG-RSP, Dkt. No. 393 at 4-5 (E.D. Tex. Oct. 21, 2025) (granting MIL "regarding irrelevant and prejudicial figures that risk skewing the damages horizon," and precluding use of defendants' revenues as well as "the wireless telecommunications industry's generating of $210 Billion in revenue in 2023").

Fifth, such evidence creates a substantial risk of unfair prejudice and jury confusion by inviting the jury to consider TSMC Ltd.'s perceived ability to pay or to anchor damages to the scale of the semiconductor industry rather than the facts of the case. *See* Fed. R. Evid. 403.

Accordingly, clarification of the Court's *Standing Order* will ensure that these improper references are excluded and will prevent unnecessary disputes in the presence of the jury.

II.   **MIL 2: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony discussing a party's other litigations and any other semiconductor industry litigation, including jury outcomes of litigations.**

AICP should be precluded from introducing any evidence, testimony, or argument concerning (1) any party's other litigations or arbitrations, (2) litigation involving other semiconductor companies or the semiconductor industry, and (3) jury verdicts, settlement amounts, or outcomes in any such matters.

As an initial matter, the Court's *Second Amended Standing Order on Motions in Limine*

already prohibits the introduction of evidence or argument regarding other litigations or proceedings involving either party. *See* Court MIL No. 13. TSMC Ltd. thus understands that Court MIL No. 13 excludes any reference to proceedings anywhere in the world involving TSMC Ltd., including TSMC Ltd.'s settled patent litigations with third parties (such as with ███████████ )[1] and TSMC Ltd.'s trade secret matters that have been in the news over the last year.[2]  To avoid any dispute at trial, TSMC Ltd. respectfully requests an *in limine* order confirming this understanding.

While Standing MIL No. 13 broadly excludes references to other litigations, it does not expressly address a recurring issue in patent cases: the use of jury verdicts, settlement amounts, or outcomes from unrelated cases—particularly within the same industry—as purported benchmarks for damages. This motion seeks to confirm that such references fall squarely within the Court's prohibition, based on the following four reasons.

First, evidence of other litigations and their outcomes is irrelevant. The jury must determine liability and damages based on the facts of this case—not the outcomes of unrelated disputes involving different parties, technologies, and circumstances. *See* Fed. R. Evid. 401–402. Jury verdicts in other cases do not make any fact of consequence more or less probable here, even within the semiconductor industry.

Second, the Federal Circuit has repeatedly cautioned against reliance on unrelated litigation outcomes to establish damages. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–72 (Fed. Cir. 2010) (rejecting reliance on unrelated agreements and emphasizing the need for comparability); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (warning against the use of arbitrary or unrelated benchmarks that distort damages).

---

[1] *See, e.g.*, Ex. A (Teece Rpt.) ¶493.
[2] *See, e.g.,* https://www.nytimes.com/2025/12/10/business/taiwan-tsmc-trade-secrets.html.

Third, such evidence is highly prejudicial. Introducing verdict amounts or litigation outcomes from other matters invites the jury to substitute the reasoning of other juries for its own analysis and encourages an award based on perceived industry norms or prior results rather than the required apportionment analysis. *See Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) (ordering new trial because of improper references to prior jury verdict, and explaining that "admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it"); *VirnetX Inc. v. Apple Inc.*, Case No. 6:12-cv-855-RWS, 2016 WL 4063802, at *5 (E.D. Tex. July 29, 2016) (concluding that "describing a prior verdict before a jury often prejudices a party" because of the risk that "the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it"). This is precisely the type of unfair prejudice that Rule 403 is designed to prevent.

For example, AICP's damages expert David Teece specifically references the 2021 jury verdict in *VLSI Technology LLC v. Intel Corp.*, Case No. 6:21-cv-00057-ADA, Dkt. No. 564 (W.D. Tex. Mar. 2, 2021), in which a Western District of Texas jury awarded $2.175 billion in damages based on Intel's infringement of two semiconductor patents. Ex. A ¶492; *see id.* nn.464-465. Dr. Teece cites this verdict in his discussion of patent licensing practices and comparable transactions in the semiconductor industry, despite acknowledging that this verdict was overturned. Not only did the *VLSI* verdict not survive post-trial challenges, but the *VLSI* litigation involved entirely different patents, different parties, and different technologies. As such, the *VLSI* litigation is devoid of probative value on the question of a reasonable royalty for AICP's seven Patents-in-Suit. Yet, there is a grave risk that jurors, upon hearing that a jury in another semiconductor patent case returned a $2.175 billion verdict, would treat that figure as a benchmark or floor for damages in this matter, thereby distorting the hypothetical negotiation framework that governs the reasonable

5

royalty analysis. Allowing such evidence in the present trial would create confusion and risk mini-trials regarding the facts and circumstances of unrelated litigations, including the technologies, parties, and legal theories at issue in those cases. Hence, any possible relevance the *VLSI* verdict might possess is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403.

More generally, permitting any reference to any verdict—or to other semiconductor industry litigation outcomes—before the jury would be unduly prejudicial because it would invite the jury to anchor its damages assessment to an eye-catching, multi-billion-dollar figure that bears no reliable relationship to the facts of this case. Fed. R. Evid. 403. The Federal Circuit has specifically warned that presenting large monetary figures untethered to the facts of the case can improperly influence the jury's damages determination. See *Uniloc*, 632 F.3d at 1318–20.

Accordingly, AICP, its counsel, and its witnesses—including Dr. Teece—should be precluded from introducing any evidence, argument, or testimony referencing TSMC Ltd.'s other litigations and any semiconductor industry litigation, including the outcomes of such litigations.

III.    **<u>MIL 3</u>: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony associating Taiwan, TSMC Ltd. or its witnesses with mainland China or denigrating, disparaging, emphasizing, or commenting unnecessarily regarding TSMC Ltd.'s status as a foreign or Asian company**

AICP should be precluded from introducing any evidence, testimony, or argument that (1) associates TSMC Ltd., its witnesses, or Taiwan with mainland China, directly or indirectly, and (2) denigrates, disparages, emphasizes, or comments unnecessarily regarding TSMC Ltd.'s status as a foreign or an Asian company. Each of these categories of reference is irrelevant to the merits of this patent infringement action   and/or gravely prejudicial. The Court should grant this motion to ensure that the jury's determination addressing liability and damages is tethered to the accused products and the asserted technology, and not infected by appeals to nationalism,

6

geopolitical anxiety, or ethnic bias.

As an initial matter, the Court's *Second Amended Standing Order on Motions in Limine* already prohibits the introduction of evidence or argument relating to national origin or ethnicity. *See* Court MIL No. 2. TSMC Ltd.'s motion is consistent with—and a necessary extension of—that directive because this case presents a specific and foreseeable risk that the *Standing Order* does not expressly address: the improper conflation of Taiwan with mainland China, and the broader use of nationality and foreignness as rhetorical tools to bias the jury against TSMC Ltd. and its witnesses. Given the current geopolitical climate, including widespread public discourse regarding U.S.-China trade tensions, semiconductor supply chain security, and the strategic significance of Taiwan's semiconductor industry, the danger that AICP may introduce—intentionally or otherwise—references that exploit these sentiments is acute and requires prophylactic protection.

First, the nationality and geographic origin of TSMC Ltd. or its witnesses have no bearing on any issue in this case. The jury's task is to determine whether the accused products infringe any valid Asserted Patents and, if so, the appropriate measure of damages reflecting the incremental value of the patented technology. *See VirnetX*, 767 F.3d at 1329–30; *Ericsson*, 773 F.3d at 1226–27. Whether TSMC Ltd. is headquartered in Taiwan, whether its witnesses are Taiwanese nationals, or whether Taiwan bears any relationship to mainland China does not make any fact of consequence—infringement, validity, or damages—more or less probable. These references are therefore irrelevant and inadmissible under Rules 401 and 402.

Beyond the lack of relevance, associating TSMC Ltd. or its witnesses with mainland China will mislead and confuse the jury. Such reference is   misleading, because Taiwan and mainland China are separate jurisdictions with distinct legal systems, governments, economies, and

7

regulatory regimes. Referring to a Taiwanese entity, such as TSMC Ltd., as "Chinese" is not a matter of imprecision—it is an affirmative mischaracterization that risks confusing the jury as to the identity, governance, and legal status of TSMC Ltd. It also risks importing into the trial the deeply fraught political and cultural dimensions of the Taiwan-China relationship, that have no place in a patent infringement proceeding. Similarly, TSMC Ltd.'s witnesses who are citizens or residents of Taiwan should not be characterized as "Chinese" or described as coming from "China." Such references would misrepresent the witnesses' actual nationality and provoke the same species of bias and confusion that this motion seeks to prevent.

Conflating Taiwan and mainland China would also feed into existing bias and unfairly prejudice TSMC Ltd. and presents a separate basis to exclude such conflation. Fed. R. Evid. 403. The risk of unfair prejudice here is not speculative; it is acute and well-documented, as this Court has previously recognized. *E.g.*, *MobileMedia Ideas, LLC v. HTC Corp.*, Case No. 2:10-cv-112-JRG, 2013 WL 12158524, at *3 (E.D. Tex. Apr. 24, 2013) (Gilstrap, J.) (granting motion in limine prohibiting reference to HTC, a Taiwanese entity, as a "Chinese" company); *see also Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) ("[A]wards influenced by passion and prejudice are the antithesis of a fair trial."). The risk of unfair prejudice is compounded in the current environment. The semiconductor industry is at the center of widely publicized geopolitical tensions between the United States and China, including debates over export controls, supply chain security, and the strategic importance of advanced chipmaking. TSMC Ltd., as the world's largest dedicated semiconductor foundry, has been the subject of extensive media coverage in this context. Given the lack of relevance, the significant risk of misleading the jury, and the substantial risk of unfair prejudice, the Court should preclude AICP from associating TSMC Ltd. or Taiwan with mainland China, directly or indirectly; and from referring to TSMC

8

Ltd. or any of its witnesses as "Chinese" or being from "China."

Second, AICP should not be permitted to denigrate, disparage, emphasize, or comment unnecessarily regarding TSMC Ltd.'s status as a foreign or an Asian company.  References to a party's foreignness or national origin invite jurors to decide the case based on bias, stereotypes, or geopolitical perceptions that have no connection to the merits. The Fifth Circuit has long recognized this danger. *See Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985) (recognizing prejudicial impact of appeals to bias or stereotypes unrelated to the merits). Appeals to juror sentiment about foreign competition, trade practices, or the perceived threat posed by overseas companies are precisely the kind of extraneous considerations Rule 403 is designed to exclude. Indeed, any unnecessary emphasis on TSMC Ltd. as a "foreign" or "Asian" company risks triggering precisely the kind of nationalistic sentiment that would improperly influence the jury's deliberations. Jurors may be tempted to "punish" TSMC Ltd. not for any proven infringement, but because of a generalized perception that a foreign company should be held to account, or that awarding substantial damages serves broader national interests. Such reasoning is antithetical to the fair administration of justice and the principles governing patent damages.

Absent a specific ruling from the Court, there is a substantial risk that AICP may attempt to circumvent the *Standing Order*'s prohibition on national origin evidence through indirect references, ambiguous phrasing, or seemingly benign characterizations that nonetheless introduce improper considerations. For example, AICP might describe TSMC Ltd. as a "foreign chip giant" in a manner calculated to signal foreignness without using the precise terms prohibited by the *Standing Order*. Even facially neutral references to TSMC Ltd.'s "global operations" or "international presence" could, in context, serve as a vehicle for the same prejudicial inferences. Clarification by the Court will provide clear guidance to all parties and their counsel regarding the

9

boundaries of permissible argument and examination, thus avoiding disputes in front of the jury. And the Court's clarification will ensure a clean evidentiary record, while reducing the likelihood of a mistrial or reversal based on improper appeals to bias.

To be clear, this motion does not seek to exclude any evidence that is genuinely relevant to liability or damages. AICP remains free to introduce evidence regarding the accused products, the asserted patents, TSMC Ltd.'s manufacturing processes, its sales activities, and every other fact bearing on infringement and the reasonable royalty analysis. The motion seeks only to preclude references that serve no purpose other than to inflame bias, confuse the jury, or otherwise prejudice TSMC Ltd. by exploiting its Taiwanese identity and/or foreign operations.

In sum, AICP should be precluded from (1) associating Taiwan or TSMC Ltd. with mainland China (including direct or indirect references to TSMC Ltd. or any of its witnesses as "Chinese" or being from "China"), and (2) denigrating, disparaging, emphasizing or commenting unnecessarily regarding TSMC Ltd.'s status as a foreign or Asian company

## IV.    MIL 4: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding an expert's report-drafting process or communications with counsel or current relationship / retention of an expert by any party or law firm, including how much an expert has been paid in matters other than the present one.

AICP should be precluded from introducing any evidence, testimony, or argument concerning (1) the drafting process of TSMC Ltd.'s expert reports or the nature and substance of these experts' communications with counsel, and (2) these experts' prior engagements or compensation in matters other than this case.

First, these categories of evidence are irrelevant. The jury's role is to evaluate the substance of the experts' opinions, including their methodology, assumptions, and the facts or data they considered—not the process by which reports were drafted or the experts' work in unrelated matters. *See* Fed. R. Evid. 401–402. Evidence concerning draft reports, attorney communications,

10

███████████████

or prior engagements does not make any fact of consequence more or less probable.

Second, Federal Rule of Civil Procedure 26 expressly protects draft expert reports and most attorney-expert communications. *See* Fed. R. Civ. P. 26(b)(4)(B)–(C). These protections reflect a deliberate policy judgment that experts and counsel must be able to collaborate candidly without fear that preliminary drafts or communications will later be used to suggest impropriety. Allowing AICP to probe these areas would undermine these protections and invite improper speculation regarding materials that are not—and should not be—in evidence.

Third, the deposition record makes clear that this line of inquiry was a critical focus of AICP's examination of TSMC Ltd.'s experts — including Dr. Baker, Dr. Bokor, and Dr. Schubert — and that AICP will inevitably pursue this inquiry at trial absent the Court's intervention. ████

████████████████████████

████████████████████████

████████████████████████

███████████████. Ex. B at 18:1-19:9. ████████████

████████████████████████

████████████████████████

███████████████. *Id.* at 19:10-21:11. ████████████

████████████████████████

████████████████████████

███████████████████. Ex. C at 18:9-22:15. ████████████

████████████████████████

████ *Id.* at 21:17-18. ████████████████

████████████████████████

11

████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  Ex. D at 13:13-16:7.

This line of questioning should be excluded at trial under Rule 403 because whatever marginal relevance the report-drafting process may have is substantially outweighed by the danger of unfair prejudice, issue confusion, and misleading the jury. Permitting AICP to reprise this deposition tactic at trial before the jury would serve no purpose other than to create the misleading impression that the experts' opinions are not genuinely their own, despite the uncontroverted testimony of all three expert witnesses that they independently formed their opinions, reviewed and approved of every word of their reports, and stand behind them in their entirety. The Court should therefore exclude all questions at trial directed at the mechanics of how the expert reports were drafted; the role counsel played in transcribing, formatting, or structuring those reports; and any communications between the experts and counsel relating to the preparation of the reports.

Fourth, the Fifth Circuit has cautioned that, while some inquiry into bias is permissible, such inquiry must be carefully circumscribed and may not devolve into mini-trials on collateral issues. *See Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980). Evidence concerning prior retentions or compensation in unrelated matters invites precisely such collateral inquiries, requiring exploration of unrelated engagements, law firms, and compensation structures that have no bearing on this case. *See Optis Wireless Tech., LLC v. Apple, Inc.*, No. 2:19-cv-00066-JRG, Trial Tr. at 292:3–9 (E.D. Tex. Feb. 9, 2026) (allowing counsel to inquire into an expert's hours and billing rate for the case at hand and to ask how many times an expert had worked for or against a particular party, but precluding inquiries into the overall or cumulative money paid to an expert for work performed for or against the parties across other matters).

12

AICP retains ample means to test the credibility of TSMC Ltd.'s experts through appropriate and permissible avenues, including cross-examination regarding their opinions, methodologies, assumptions, and compensation in this case. Expanding the scope of inquiry beyond these bounds serves no legitimate purpose and risks confusing and misleading the jury. Accordingly, any minimal probative value is substantially outweighed by the risks of unfair prejudice, confusion, and undue delay. Fed. R. Evid. 403.

## V.     __MIL 5__: Precluding AICP, its counsel, and its witnesses from introducing any evidence, argument, or testimony regarding a corporate representatives' lack of knowledge outside of personal knowledge or Rule 30(b)(6) topics.

AICP should be precluded from presenting evidence, testimony, or argument that TSMC Ltd.'s trial witnesses should be prepared to discuss or be aware of topics outside of their personal knowledge, unless such persons were designated as Rule 30(b)(6) designees on such topics. This includes evidence, testimony, or argument that: (i) TSMC Ltd.'s fact witnesses have not read the Asserted Patents or formed opinions regarding the Asserted Patents, including positions on noninfringement and non-infringing alternatives, unless the witnesses were designated as Rule 30(b)(6) witnesses on such topics; and (ii) TSMC Ltd.'s trial witnesses were obligated to prepare on any particular topic or charged with knowledge of others within the company, unless that individual was previously designated as a Rule 30(b)(6) witness on such a topic. AICP should not be permitted to imply to the jury that a corporate representative or other fact witness is expected to know every fact on every topic that might be relevant to the case. This Court has previously granted substantially similar motions. E.g*., Pictiva Displays Int'l Ltd., v. Samsung Elecs. Co. Ltd.,* No. 2:23-cv-00495-JRG-RSP, Dkt. No. 400 at 4 (E.D. Tex. June 30, 2025); *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-00463-JRG-RSP, Dkt. No. 432 at 12 (E.D. Tex. Apr. 5, 2023); *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, Case No. 2:22-cv-00422-JRG-RSP, Dkt. No. 350 at 3 (E.D. Tex. July 8, 2024).  The Court should do likewise here.

13

First, the prejudice of evidence, testimony, or argument that the fact witnesses have not read or formed opinions regarding the Asserted Patents, when outside their personal knowledge and not designated on those topics, greatly outweighs its probative value. *See Headwater Rsch.*, Dkt. No. 350 at 3 (E.D. Tex. July 8, 2024) (excluding "evidence, testimony, or argument that Samsung's fact witnesses have not read the patents-in-suit or formed opinions regarding the patents-in-suit unless the witnesses were designated on such topics" and "argument, evidence, or testimony suggesting that a party's corporate representative at trial is obligated to prepare on any particular topic or is charged with knowledge of others within the company unless said representative was previously designated as a Rule 30(b)(6) witness on said topic.").

AICP has the burden to establish infringement, and any evidence that TSMC Ltd.'s fact witnesses have not reviewed the Asserted Patents or formed opinions concerning infringement flips that burden on its head by improperly suggesting that TSMC Ltd.'s employees had a duty to review patents and form opinions concerning noninfringement. See *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) (vacating a jury's willfulness finding as not supported by substantial evidence in part because it was "unremarkable" that engineers without legal training did not analyze the asserted patents). Any evidence that a TSMC Ltd. fact witness has not reviewed the Asserted Patents will likely mislead the jury on willfulness, as TSMC Ltd. witnesses' lack of awareness of the Asserted Patents does not show that TSMC Ltd. willfully infringed (and it should lead to the opposite conclusion, as willfulness requires knowledge of the patents), especially where there is no duty to investigate the issue of infringement. See *Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 2:21-cv-15-JRG 2022 U.S. Dist. LEXIS 100437, at *6 (E.D. Tex. May 24, 2022) (granting motion to preclude suggestion that the defendant had a duty to investigate a patent).

Second, the prejudice of evidence, testimony, or argument that TSMC Ltd.'s trial witnesses lack knowledge outside their personal knowledge or on topics for which they were not designated, greatly outweighs its probative value. TSMC Ltd.'s trial witnesses have no obligation to prepare to testify on topics outside their personal knowledge. *Netlist*, Dkt. No. 432 at 12 (E.D. Tex. Apr. 5, 2023) (recognizing the same when granting similar MIL). So, the Court should not permit AICP to present any argument, evidence, or testimony suggesting that any TSMC Ltd. trial witness is obligated to prepare on any particular topic or is charged with the knowledge of others within their company, much less another company, unless that individual was previously designated as a Rule 30(b)(6) witness on such a topic. *Id*. For example, if TSMC Ltd.'s corporate representative works in sales, AICP should not be permitted to question the witness on low-level technical details of manufacturing the nodes at issue, or on pre-suit communications between the parties. Any possible lack of knowledge of such information—which may be the subject of other witnesses' knowledge and testimony—is not relevant to the claims of any party and will unfairly prejudice the jury against TSMC Ltd.. Fed. R. Evid. 402, 403; *Netlist*, Dkt. No. 432 at 12 (granting MIL on this issue "[a]s to any witness testifying on behalf of Samsung who was never noticed or deposed as a 30(b)(6) witness [on a particular topic]"); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72-DF, Dkt. No. 2392 at 48-9 (E.D. Tex. Oct. 5, 2010) ("The Parties should be precluded from asserting that a person who is acting as a Party's corporate representative at trial (1) has a legal obligation to prepare to testify on any particular topic, (2) is charged with the knowledge of others within the company, or (3) has the ability to bind the Party with his or her trial testimony.").

## VI.    Conclusion

TSMC Ltd. respectfully requests that the Court grant its motions in limine.

15

███████████████

Dated: April 28, 2026.                    Respectfully Submitted,

                                          /s/ *Jennifer Truelove*

Jennifer Truelove                         Karrie Wheatley
TX State Bar No. 24012906                 TX State Bar No. 24098605
jtruelove@mckoolsmith.com                 Tony Nguyen
MCKOOL SMITH, P.C.                        TX State Bar No. 24083565
104 E. Houston Street, Suite 300          Jacqueline Moran (*pro hac vice*)
Marshall, Texas 75670                     TX State Bar No. 24121740
Telephone: (903) 923-9000                 FISH & RICHARDSON P.C.
Facsimile: (903) 923-9099                 909 Fannin Street, Suite 2100
                                          Houston, TX 77010
James E. Quigley                          Telephone: (713) 654-5300
TX State Bar No. 24075810                 Facsimile: (713) 652-0109
jquigley@mckoolsmith.com                  wheatley@fr.com
MCKOOL SMITH, P.C.                        nguyen@fr.com
303 Colorado Street Suite 2100            jtmoran@fr.com
Austin, TX 78701
Telephone: (512) 692-8700                 Michael J. McKeon
Telecopier: (512) 692-8744                DC Bar No. 459780
                                          Christian Chu
Sean Pak (pro hac vice)                   DC Bar No. 483948
CA Bar No. 219032                         Benjamin Christoff
Iman Lordgooei                            DC Bar No. 1025635
CA Bar. No. 251320-CA                     FISH & RICHARDSON P.C.
Kevin (Gyushik) Jang                      1000 Maine Avenue, S.W., Suite 1000
NY Bar No. 5391354                        Washington, DC 20024
Jodie Cheng (pro hac vice)                Telephone: (202) 783-5070
CA Bar No. 292330                         Facsimile: (202) 783-2331
QUINN EMANUEL URQUHART &                  mckeon@fr.com
SULLIVAN, LLP                             chu@fr.com
50 California Street, 22nd Floor          christoff@fr.com
San Francisco, CA 94111
Telephone: (415) 875-6600                 Kevin Su
Facsimile: (415) 875-6700                 MA Bar No. 663726
seanpak@quinnemanuel.com                  FISH & RICHARDSON P.C.
imanlordgooei@quinnemanuel.com            One Marina Park Drive
kevinjang@quinnemanuel.com                Boston, MA 02210
jodiecheng@quinnemanuel.com               Telephone: (617) 542-5070
                                          Facsimile: (617) 542-8906
Conrad Gosen (pro hac vice)               su@fr.com
MN Bar No. 395381
*Not admitted in WA
QUINN EMANUEL URQUHART &                  James Huguenin-Love
SULLIVAN, LLP                             MN Bar No. 0398706

16

1109 1st Ave, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Facsimile: (206) 905-7100
conradgosen@quinnemanuel.com

Preston Long (pro hac vice)
Carlos Duarte-Guevara (pro hac vice)
FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER,
LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4444
jp.long@finnegan.com
carlos.duarte-guevara@finnegan.com

Kevin D. Rodkey (pro hac vice)
Shawn S. Chang (pro hac vice)
FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER,
LLP
271 17th St., NW, Suite 1400
Atlanta, GA 30363-6209
Telephone: (404) 653-6400
Facsimile: (404) 653-4444
kevin.rodkey@finnegan.com
shawn.chang@finnegan.com

FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696
huguenin-love@fr.com

Karolina Jesien (*pro hac vice*)
NY Bar No. 4626180
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
jesien@fr.com

Sara C. Fish
GA Bar No. 873853
FISH & RICHARDSON P.C.
1180 Peachtree St., NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002
sfish@fr.com

**ATTORNEYS FOR DEFENDANT,
TAIWAN SEMICONDUCTOR
MANUFACTURING CORPORATION
LIMITED**

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via electronic mail with a notification via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 28, 2026.

/s/ Jennifer Truelove
Jennifer Truelove

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case because it attached, cites to, quotes, and otherwise discusses materials that Plaintiff and Defendant have designated Confidential and/or Highly Confidential.

/s/ Jennifer Truelove
Jennifer Truelove

18